Pope, executor, *vs.* Heartwell *et al.*

1. Where an execution was levied on land, and the debtor, being unable to pay the money, induced another to bid off the property, and made a verbal agreement that he would repay the amount of the purchase money with an agreed amount as interest, and that the purchaser should thereupon convey the property to him, the title obtained by the purchaser at the sheriff's sale was not tainted with usury and void, even though the interest specified in the independent agreement with the purchaser was usurious.

2. Where the purchaser at the sheriff's sale desired his money, and the debtor being unable to pay him, a guardian paid the amount, took a deed from such original purchaser, and made a like agreement to convey to the debtor upon certain terms (which agreement was at first in parol, but was subsequently reduced to writing), the title so obtained by the guardian was not void, although the amount to be paid under the contract may have been usurious.

3. On a bill filed by the next friend of the legatee of the ward who had died, he would be entitled to recover the amount paid by the guardian for the property, with interest thereon at seven per cent, deducting the payments which had been made (most of them under the name of rent) at the time when they were made, with a lien on the property for the amount of such recovery.

4. The amount found in this case by the jury was too large. The correct amount of principal, according to the data in the record at the date of the last payment, was $1,175.22, and the interest to October 3, 1886, amounted to $521.01, making the aggregate $1,696.23. If the complainant will write off the recovery in excess of that amount, the judgment is affirmed; otherwise reversed.

March 3, 1888.

Executions. Levy and Sale. Title. Interest and Usury. Guardian and Ward. Practice in Supreme Court. Before Judge Bower. Dougherty Superior Court. October Term, 1886.

Reported in the decision.

G. J. WRIGHT; D. H. POPE, for plaintiff in error.

R. HOBBS; C. B. WOOTEN, for defendants.

SIMMONS, Justice.

It appears from the record in this case that in 1868, Cherry obtained an execution against Merrick Barnes, and had the same levied upon the house and lot in Albany known as the Barnes House. Barnes was unable to pay the money on said *fi. fa.*, and induced one Jackson to bid off the property at the sheriff's sale, and made a verbal agreement with Jackson that he would repay him the money which Jackson had paid to the sheriff, with a certain agreed sum as interest thereon, Jackson agreeing to make Barnes a deed to the property when this money and interest was paid. Jackson bid off the property, and the sheriff made him a deed thereto. He allowed Barnes to remain in possession of the property, and to pay him the agreed rate of interest from year to year.

In 1871, Jackson needing his money, and Barnes being unable to repay him, Jackson made a deed to Dr. Heartwell, as guardian of Dolly Tarver; and Heartwell and Barnes had the same understanding as to the possession of the property and the payment of interest thereon. This was a verbal agreement between Heartwell and Barnes until sometime in 1872, when the agreement was reduced to writing, whereby Heartwell, as guardian, made Barnes a bond for title, reciting that when a certain amount of money was paid to him by Barnes, he would make Barnes a title to the land, and that Barnes was to pay $389.38 per annum for the rent of said property semi-annually, commencing December 3, 1871, and Barnes was also to pay the taxes upon the property and keep it insured, and was to transfer the policy of insurance to Heartwell. This agreement between Heartwell and Barnes went on for

some time, until Heartwell needed the money, and Barnes induced Ely to advance the money to pay Heartwell and take the deed in his name.   Ely advanced the money to Welch & Bacon, who failed before the money was paid to Heartwell.   Heartwell, it seems, had made a deed to Ely and left it with Welch & Bacon, and Ely had conveyed the land to Barnes and taken a mortgage thereon for his security.   During these years, Dolly Tarver, the ward of Dr. Heartwell, died, leaving a will, in which she bequeathed all of her property to her half-brother, Charles P. Heartwell, the minor son of Dr. Heartwell.

In 1881, T. F. Newell, as next friend of Charles P. Heartwell, Jr., filed a bill against Charles P. Heartwell, Sr. as guardian of Charles P., Jr., and against Merrick Barnes and Robert N. Ely; in which bill he alleged the foregoing facts, and claimed that this house and lot sold by Dickson to his father, Charles P., Sr., as guardian for Dolly Tarver, under the will of said Dolly Tarver belonged to him, the said Charles P., Jr.   He sought, by his bill, to recover the property, and asked that, in the event of his failure to recover it, he be allowed to foreclose this deed made by Jackson to Heartwell, Sr., as an equitable mortgage.   By a subsequent amendment to his bill, he alleged the fact that Charles P. Heartwell, Sr., as the guardian of Dolly Tarver, had invested upwards of $3,400 of his ward's money in this property, and asked a decree against Barnes for the amount of that money, with interest thereon.

Barnes answered the bill, and alleged that he had induced Jackson to buy this land at the sheriff's sale, with the distinct understanding that the land was to be his, and that Jackson was to lend him this amount of money, and take the deed in his own name as security therefor; and that when Jackson wanted the money, he was unable to pay it, and employed Ely to get a person to advance the money to Jackson, on the same terms and conditions; and that Ely, upon the same terms and conditions, got Dr. Heartwell to pay off Jackson and take a deed from Jack-

son. Barnes claimed that the whole transaction was nothing but a loan, first, from Jackson to him, and secondly, from Heartwell to him; and that the deed was void on account of usury therein, Jackson and Heartwell both having charged him more than legal rate of interest. There are a great many other facts alleged in the bill and answers, but these, we think, are sufficient to a clear understanding of the view we take of this case.

On the trial of the case in the court below, the jury returned a verdict for the complainant. The respondents made a motion for a new trial upon many grounds, as set out in the record, which motion was overruled and they excepted.

1, 2, 3. The view we take of this case renders it unnecessary to decide the many points made in the motion for a new trial. We do not think that the title which Jackson got from the sheriff, and which he made to Heartwell, is void on account of usury. The title to this land was not made to Jackson by Barnes. It was bought by Jackson at a regular sheriff's sale, and the sheriff, in accordance with the law, conveyed the title to Jackson, and Jackson conveyed it to Heartwell as guardian. Whatever agreement Jackson and Barnes made as to the rate per cent. or usury which Barnes was to pay Jackson, did not affect this title, and whatever agreement as to usury there was between Heartwell, who purchased from Jackson, and Barnes, did not affect the title made by Jackson to Heartwell. Therefore the title was not tainted with usury. The usurious transactions were separate and independent contracts between Barnes and Jackson, and Barnes and Heartwell, and not between the sheriff who conveyed the title and Jackson, or Heartwell and Jackson. That between Jackson and Barnes was merely a verbal contract for the usury as long as Jackson held the title to the land; the contract between Heartwell and Barnes was verbal until 1872, when Heartwell made a bond for title, wherein he agreed to convey the title to Barnes upon his payment for

the property, with what Barnes claimed to be usurious interest. So we do not think the deed was affected with usury. Barnes was not the grantor in the deed to Jackson, but the sheriff was the grantor, and there was no usury between him and Jackson which could affect the title he made to Jackson. Nor was there any usury in the sale of Jackson to Heartwell which could affect the title of Heartwell.

The case in the court below seemed to turn on the last amendment made by the complainant to this bill, in which he claimed simply the property, with interest on the money advanced by Heartwell to Jackson; and the jury returned a verdict for $2,800 in his favor, on that amendment to his bill, with a lien upon the property until that amount was paid.

4. One of the grounds of the motion for a new trial is, that this amount found by the jury was erroneous, upon any theory of the case. We have carefully looked into this ground, and have come to the conclusion that the exception is well taken. The calculation which we have made from the *data* gathered from this voluminous record shows, that the principal due was at the last payment $1,175.22, and the interest from the last payment to October 3d, 1886, was $521.01, making the aggregate the sum of $1,696.23. If we are correct in our calculation, the verdict of the jury in excess of this amount is erroneous; and if the complainant below will write off all in excess of this amount, we affirm the judgment. If the complainant declines to write off this amount, the judgment is reversed. We hold that the true theory and the law of this case is, that this complainant should recover the amount paid by Dr. Heartwell to Jackson, with interest thereon at the rate of seven per cent., crediting all the payments made by Barnes to Heartwell at the time they were made.

Judgment affirmed on terms.